IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| GLENDA GILMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:06-CV-442 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 18] will be granted, and plaintiff's motion for summary judgment [doc. 14] will be denied.

I.

*Procedural History*

Plaintiff was born in 1948. [Tr. 45]. She applied for benefits in July 2003, claiming to be disabled by chronic obstructive pulmonary disease ("COPD"), irritable bowel syndrome, allergies, and arthritis in her hands, feet, lower back, and left shoulder. [Tr. 45, 53, 88, 396]. Plaintiff initially alleged a disability onset date of October 1, 2001 [Tr. 45, 396], which she later amended to January 1, 2003. [Tr. 493]. Plaintiff's applications were

denied initially and on reconsideration. She then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in August 2005.

In November 2005, the ALJ issued a decision denying benefits. [Tr. 411-19]. Plaintiff then sought review by the Commissioner's Appeals Council, which vacated the hearing decision and remanded for further proceedings. [Tr. 427-30].

Following plaintiff's second administrative hearing in May 2006, the ALJ again issued a decision denying benefits. Therein, he concluded that plaintiff suffers from COPD, chronic pulmonary insufficiency, and arthralgias, which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 17]. The ALJ found plaintiff to have a residual functional capacity ("RFC") for a restricted range of medium exertion. [Tr. 17]. Relying on vocational expert testimony, the ALJ concluded that plaintiff remains able to perform her past relevant work as a garment assembler. [Tr. 19]. Accordingly, plaintiff was again deemed ineligible for benefits.

Plaintiff then again sought, and was denied, Appeals Council review. [Tr. 6]. The ALJ's second ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff's past relevant employment was in factories, working as an inspector, counter, tester, and garment assembler. [Tr. 60, 476]. She stopped working on October 1, 2001, due to a plant closing. [Tr. 460]. She claims daily, constant, lower back pain for which medication provides no relief. [Tr. 468]. She has also stated that "I have breathing problems more than anything else." [Tr. 67].

Plaintiff is able to cook, care for and bathe her dog, sweep, mop, shop, drive, make her bed, do laundry (including hanging clothes on, and removing them from, a clothes line), take out the garbage, and perform other cleaning tasks. [Tr. 68-69, 91, 93, 466-67, 514]. She allegedly must rest during certain tasks due to aggravation of her back pain or "to get my breath back." [Tr. 68, 466, 497].

III.

*Relevant Medical Evidence*

Plaintiff has undergone treatment for a number of complaints including COPD, which is generally described as stable or nonacute. [Tr. 144-45, 273, 314-19, 372, 485]. However, her briefing to this court addresses only a single, narrow issue pertaining to her lower back pain. The court's evidentiary discussion will accordingly focus on that condition.

Dr. Joseph Johnson performed a consultative examination in September 2003. Spinal range of motion was normal. [Tr. 127]. Mild osteoarthritic swelling was noted only

3

in the hands. [Tr. 127].

Nonexamining physician Glenda Knox-Carter completed a Physical RFC Assessment in October 2003. Dr. Knox-Carter predicted that plaintiff could work at the medium level of exertion [Tr. 137] avoiding concentrated exposure to respiratory irritants [Tr. 140].

In February 2000, Dr. Girendra Hoskere noted that osteoporosis testing was "in the osteopenia range." [Tr. 244].[1] January 2001 bone density testing showed "severe osteoporosis of the femoral neck with normal lumbar spine[.]" [Tr. 301]. In April 2001, Dr. Hoskere described plaintiff's osteoporosis as severe and extreme. [Tr. 220].

A January 2003 chest x-ray indicated "some mild osteoarthritic changes especially in the upper thoracic spine." [Tr. 279]. A June 2003 chest x-ray showed "[o]steopenia of the thoracic spine." [Tr. 278]. A January 2004 x-ray of the lumbar and thoracic spine showed "normal alignment, slightly decreased bone mineralization, no wedging [and] some narrowing in the intervertebral disk spaces of the upper thoracic spine." [Tr. 266].

In March 2004, treating physician Clary Foote noted that "lawyer wants x-rays of hands done also [] shoulder [and] wants anything else done to help her get disability." [Tr. 150]. A March 2004 spinal x-ray revealed "minimal osteoarthritic changes." [Tr. 262]. There was "slight narrowing" at L5-S1 with osteoarthritic changes, and the thoracic spine

---

[1] Osteopenia is "any decrease in bone mass below the normal." *Dorland's Illustrated Medical Dictionary* 1289 (29th ed. 2000).

4

appeared "fairly normal." [Tr. 260]. In September 2004, Dr. Foote wrote that plaintiff was "unable to return to her normal labor job as before. Could be cross trained to perform sedentary type labor." [Tr. 344].

On September 27, 2004, plaintiff told Dr. Foote that her constant "throbbing, stabbing, dull" back pain had worsened over the last two weeks. [Tr. 340]. One month later, Dr. Foote completed a Physical Capacities Evaluation Form. [Tr. 305-07]. He opined that plaintiff could work an eight-hour day with a sit/stand option. [Tr. 305]. Lifting was limited to no more than ten pounds frequently and twenty-five pounds occasionally. [Tr. 305]. Without explanation, Dr. Foote stated that plaintiff would have problems "with stamina and endurance which would severely interfere with daily activities in a work environment[.]" [Tr. 306]. Citing pain only in the lower back, Dr. Foote stated that it was reasonable to expect that plaintiff's condition would cause moderate, but not severe, pain. [Tr. 306]. Again citing only lower back pain, Dr. Foote opined that plaintiff would require more than three work absences per month. [Tr. 307]. There were no medication side effects sufficient to severely affect concentration, and pain would not be expected to distract plaintiff from work-related tasks. [Tr. 306].[2]

On June 13, 2005, Dr. Foote completed another Medical Assessment. [Tr. 375-77]. He cited lower back and shoulder pain, which he again described as "moderate." [Tr. 375]. Dr. Foote wrote that the moderate pain is reduced by medication to "two out of ten"

---

[2] According to Dr. Foote's office notes from that date, plaintiff reported that she was taking no medications other than Tylenol because her other medicine did not provide relief. [Tr. 337].

on a ten-point pain scale. [Tr. 376]. He again opined that plaintiff's back pain would cause more than three absences from work per month. [Tr. 377]. In contrast to his earlier assessment, Dr. Foote stated that both pain and medication side effects diminish plaintiff's concentration. [Tr. 375-76].[3]

Lastly, a June 2005 chest x-ray showed no acute lung infiltration but "degenerative changes of the thoracic spine with osteophyte formation." [Tr. 480].

IV.

*Vocational Expert Testimony*

At the second administrative hearing, Jane Hall ("Ms. Hall" or "VE") testified as a vocational expert. Ms. Hall classified plaintiff's prior jobs as: medium and semiskilled [sewer, Tr. 62]; light and unskilled [tester, inspector, and pairer, Tr. 63-65]; and light and semiskilled [sewer, Tr. 65]. [Tr. 515].

The ALJ presented a hypothetical claimant of plaintiff's age, education, and prior work experience capable of a "limited range of medium work," lifting up to twenty-five pounds occasionally and up to ten pounds frequently. [Tr. 515].[4] The hypothetical claimant

---

[3] According to Dr. Foote's office notes from that date, plaintiff reported only that she was "taking my regular meds for my lungs." [Tr. 321]. A list of four prescription refills is written at the bottom of the page but, other than breathing medications, the list is illegible to the undersigned. Dr. Foote's office notes for appointments between the two evaluation dates do not legibly reflect information pertaining to medication prescriptions, consumption, or side effects.

[4] This hypothetical reflects an extremely "limited range of medium work." The definition of *light* work involves occasional lifting of no more than twenty pounds, and frequent lifting of up to ten pounds. *See* 20 C.F.R. § 404.1567(b).

6

would require a sit/stand option and

> would be precluded from any more than frequent climbing, stooping, bending from the waist to the floor, crouching and crawling. She would be precluded from any work around environmental pollutants such as dust, smoke, chemicals, fumes, noxious gasses, and she would be precluded from any work around hazards such as dangerous or moving machinery or unprotected heights.

[Tr. 515-16].

Ms. Hall testified that the hypothetical worker could perform plaintiff's most recent sewing job [Tr. 65] and could also perform plaintiff's past inspector job if a sit/stand option were available. [Tr. 516]. In the alternative, the VE identified other light jobs in the regional and national economies that the hypothetical claimant could perform. [Tr. 516-17]. Ms. Hall's testimony would not be impacted by complaints of mild to moderate pain. [Tr. 517]. Severe pain, or more than two absences per month, would preclude all employment. [Tr. 517-18].

V.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account

7

whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[5] Disability is evaluated pursuant to a five-step analysis summarized as follows:

---

[5] A claimant is eligible for SSI on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

VI.

*Analysis*

The ALJ's RFC findings are consistent with the opinion of Dr. Foote as to lifting, carrying, sitting, standing, and walking. [Tr. 18]. The ALJ did not, however, accept Dr. Foote's prediction of excessive absences, explaining as follows:

> Although Dr. Foote indicated that the claimant could not be expected to be reliable in attending an eight hour a day, 40-hour work week in view of the degree of pain she experienced, and that she experienced moderate pain, the physician also indicated in June 2005 that her medications reduced her pain to a level of two on a scale of ten. In October 2004, Dr. Foote indicated that the claimant's prescribed medications had no side effects which could severely

9

affect her alertness or concentration, and that the claimant's pain did not adversely affect her concentration to the point that it would distract her from work-related tasks. In June 2005, the physician said that side-effects of the claimant's medication affected concentration, and that pain adversely affected her concentration. These statements are inconsistent, as the records show that the claimant previously took two pain medications, Hydrocodone and Gabitril, and that by June 2005, she was only prescribed Gabitril for pain. The physician also stated in June 2005 that the claimant was able to work part time, and that when her back flared up she was unable to perform manual duties. . . . [T]he assertion that the claimant could not work a forty-hour week is entirely inconsistent with the record, The claimant regularly made her bed, mopped, swept, took out garbage, did laundry, cooked, grocery shopped, and now drives once or twice weekly, according to her self-report . . . and testimony. The consulting physician, Dr. Johnson [,] did not find any restrictions on work activities . . . . The undersigned accords his opinion greater weight as to the claimant's ability to sustain activity, as it is more consistent with the overall evidence of record.

[Tr. 18].

In the sole issue presented on appeal, plaintiff contends that the ALJ erred by not accepting treating physician Foote's prediction of excessive absences. The court does not agree.

The opinions of treating physicians are entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner may reject the opinion of a treating physician if it is not supported by sufficient medical data and if the ALJ articulates a valid basis for doing so. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

As the ALJ correctly noted, Dr. Foote twice described plaintiff's pain as no more than "moderate," opining that medication further reduced the "moderate" pain to a mere "two" on a ten-point pain scale. Dr. Foote's records do not explain why "nonsevere" pain would cause an extraordinary number of absences. It is noteworthy that the VE testified that moderate pain would not affect the ability to return to plaintiff's prior work.

It was also within reason for the ALJ to find plaintiff's activity level inconsistent with a need for excessive absences. Further, he accommodated plaintiff's purported need for rest by restricting lifting and by requiring a sit/stand option.

As suggested by the ALJ, the value of the treating physician's assessments is diminished by unexplained internal inconsistencies. Dr. Foote first opined that neither pain nor medication would significantly affect concentration. Conversely, eight months later he stated that *both* pain and medication would impact concentration. Dr. Foote's office notes do not make clear any changes in prescriptions or consumption in that eight-month period, nor do they document any such side effects. It is further noted that plaintiff twice told the Commissioner that her medication produces no side effects other than an upset stomach or "jumpiness." [Tr. 72, 89].[6]

It is also noted that plaintiff has repeatedly stated that medication provides her virtually no pain relief. When contrasted with her treating physician's report of "two out of

---

[6] In another form provided to the Commissioner, plaintiff offers an extraordinary list of side effects. The list is not supported by any objective evidence in the record and somewhat resembles a standard medication warning pamphlet. [Tr. 468].

ten" pain reduction, such statements reduce the credibility of her claims as a whole.

Lastly, plaintiff criticizes the ALJ for speculating that Dr. Foote's assessments may have been influenced by her attorney's request for "anything . . . to help her get disability." [Tr. 18, 150]. The court views the ALJ's passing comments on that issue to be no more than dicta. The true substance of the ALJ's decision, which the court finds to be supported by substantial evidence, is that plaintiff's "moderate, 2 out of 10" pain would not necessarily be expected to produce the attendance and concentration limitations alleged. [Tr. 18].

The ALJ reasonably found Dr. Foote's assessments to be unsupported by sufficient medical data, and he articulated a valid basis for not accepting those assessments in full. The final decision of the Commissioner was thus supported by substantial evidence and will be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge